**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| UNIVERSAL STEEL PRODUCTS, INC. ) <br> PSK STEEL CORPORATION ) <br> THE JORDAN INTERNATIONAL COMPANY ) <br> DAYTON PARTS, LLC ) <br> ) <br>        *Plaintiffs*, ) <br>    v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> DONALD J. TRUMP, ) <br> President of the United States, ) <br> ) <br> WILBUR L. ROSS ) <br> Secretary of Commerce, ) <br> ) <br> and ) <br> ) <br> MARK A. MORGAN ) <br> Acting Commissioner, U.S. Customs and Border Protection ) <br> ) <br>        *Defendants*. ) | Court No. 19-00209 |

<u>**COMPLAINT**</u>

Plaintiffs Universal Steel Products, Inc., PSK Steel Corp., The Jordan International Company and Dayton Parts, LLC, by and through their attorney, submit this Complaint seeking equitable relief against the unlawful imposition of import restrictions on certain steel products resulting from a deficient report of the Secretary of Commerce (the "Commerce Report") determining that the importation of an article (steel) from all countries "threaten to impair" the national security of the United States and the resulting Proclamations issued by the President on March 8, March 22, May 31, August 10, 2018,  (the "Proclamations").  The Commerce Report and the Proclamations

claimed to be pursuant to Section 232 of the Trade Expansion Act of 1962, as amended, 19 U.S.C. § 1862 ("Section 232").

## JURISDICTION

1. Plaintiffs seek declaratory and injunctive relief against unlawful import restraints on steel products based on the Commerce Report and the Proclamations, an order of this Court enjoining defendants from enforcing the 25% tariff increase for imports of certain steel products and other trade barriers imposed by Presidential Proclamation 9705 of March 8, 2018, as subsequently amended by Proclamations 9711 (March 22, 2018), 9740 (April 30, 2018), 9759 (May 31, 2018), and 9777 (August 29, 2018).

2. Plaintiffs' claims arise under Section 232, a law of the United States governing restrictions on imports imposed for reasons other than the raising of revenue.  This Court has jurisdiction over this action under 28 U.S.C. § 1581(i)(2) and (4).

3. The Commerce Report is subject to judicial review as "final agency action" under the Administrative Procedure Act, 5 U.S.C. § 706.  The Commerce Report's findings and conclusions are arbitrary and capricious and unsupported by substantial evidence in the record of decision.  The conclusions are fundamentally unrelated to the findings in the record of decision. Defendant Secretary of Commerce fundamentally misinterpreted the relevant provisions of Section 232.  Therefore, the Commerce Report must be set aside, further collection of tariffs must be enjoined until the requirements of Section 232 have been satisfied, and plaintiffs request refunds of duties paid by plaintiffs.

4. The President's Proclamations are subject to limited judicial review under 28 U.S.C. § 1581(i)(2) and (4) on the grounds that the President fundamentally misinterpreted the requirements of Section 232.

5. The Proclamations must be set aside because they are unsupported by a valid report prepared by the Secretary of Commerce.

## PARTIES

6. Plaintiff Universal Steel Products, Inc. ("Universal Steel") is a corporation organized under the laws of the State of New Jersey, with its principal place of business in 222 Bridge Plaza South, Suite 530, Fort Lee, NJ 07024. Its principal business is importation and reselling of specialized coated flat steel products. For Universal Steel, imports of steel products covered by the Section 232 trade restrictions declined from approximately 51,000 metric tons in 2017, before the restrictions became effective. In 2018, purchases of imported steel products from countries covered by the Section 232 trade restrictions declined to approximately 25,000 metric tons, a 50 percent decline. In 2019 through October, Universal Steel purchased approximately 11,000 metric tons of steel from countries subject to trade restrictions pursuant to Section 232. Universal Steel has paid Section 232 steel tariffs of approximately $6,000,000.

7. Plaintiff PSK Steel Corporation ("PSK Steel") is a corporation organized under the laws of the State of Ohio, with its principal place of business in Hubbard, Ohio. PSK Steel is a small, privately held corporation. Its principal businesses are tool steel sales and machining. Tool steel bars are the principal products purchased and sold by PSK Steel and the only steel products imported by PSK Steel. As the importer of record of tool steel bars, PSK Steel entered approximately 774 metric tons ("MT") of steel subject to section 232 trade restrictions in 2018. PSK Steel entered approximately 1,344 MT of steel subject to section 232 trade restrictions in 2019 to date. The tariffs on steel imports from various countries has imposed a cost to PSK Steel of approximately $1.2 million in Section 232 tariffs on imports entered after March 23, 2018. The competitive disadvantage in the U.S. market resulting from the Section 232 tariffs

on steel imports has sharply reduced the business opportunities available to PSK Steel since the Commerce Report and the Proclamations were issued.

8. Plaintiff The Jordan International Company ("TJI") is a corporation organized under the laws of the State of Delaware, with its principal place of business in Hamden, Connecticut. TJI is a privately held corporation.  TJI purchases and resells steel products from various countries that are subject to the section 232 trade restrictions imposed in 2018.  It is a major importer of galvanized and cold rolled steel coils manufactured in Turkey.  As the importer of record, TJI entered approximately 16,978 MT of steel from various countries subject to steel tariffs and quotas into the United States in 2018 and 15,972 MT in 2019. The tariffs on steel imports from various countries has cost TJI an additional $8.1 million in Section 232 tariffs on such imports entered after March 23, 2018. The doubling of the tariffs on steel imports from Turkey cost TJI an additional $2.5 million in Section 232 tariffs on such imports entered on or after August 13, 2018. The competitive disadvantages in the U.S. market resulting from the doubling of Section 232 tariffs on steel imports from Turkey have prevented TJI from making sales of steel products from Turkey since the Steel Proclamation on Turkey was issued.

9. Plaintiff Dayton Parts, LLC ("Dayton Parts") is a corporation organized under the laws of the State of Delaware. Dayton Parts' principal place of business is in Shiremanstown, Pennsylvania.  Dayton Parts' principal business is the manufacture of automotive and truck parts for light and heavy trucks, including leaf springs.  Dayton Parts relies on imports of special quality bar stock for the manufacture of leaf springs, because adequate domestic

sources are not available for these products.  Dayton Parts has purchased special quality bar stock from ArcelorMittal in Canada for  more than 20 years.  From June 1, 2018 until May 23, 2019, Dayton Parts paid tariffs on a significant percentage of imports of special quality bar stock from Canada.  These tariffs caused financial losses from increased cost of imports.  These costs were mitigated by the approval of approximately 70 exclusions for certain special quality steel bar stock; those exclusions reduced Dayton Parts' liability for steel tariffs but did not eliminate them.  As the importer of record or consignee, Dayton Parts paid, directly or indirectly, more than $500,000 in tariffs imposed under Section 232 which were not recovered through exclusions.

10. The defendant United States of America is the entity to which the 25% tariff increases are being paid and is the statutory defendant under section 1581(i)(2) and (4).

11. The defendant Donald J. Trump is the President of the United States who, after receiving said recommendation from the Department of Commerce, purported to impose tariffs and other import restrictions on imported steel products that are the basis of this action.

12. The defendant Wilbur L. Ross is the Secretary of the U.S. Department of Commerce.  He directly supervised the Commerce Report at issue in this case (Docket No. .  Under Section 232, he was responsible for providing a written recommendation to the President, which purported to authorize the President to impose import restrictions, including tariffs, on steel imports.  Without this recommendation, which, according to Section 232, must provide and rely on evidence, the President lacks the authority to impose the challenged restrictions on steel imports.  Thus, the Commerce Report prepared by Defendant Ross is final departmental action subject to judicial review by this Court.

13. The Defendant Mark A. Morgan is the Acting Commissioner, U.S. Customs and Border Protection, which is charged with assessment and collection of Customs duties and fees which administers and enforces the trade restrictions challenged in this action.

## STANDING

14. Plaintiffs have standing to file this action because they have, individually and collectively, suffered injury in fact as a result of the Commerce Report and the President's Proclamations which proceeded directly from the Commerce Report.

15. Plaintiffs have standing to bring this action pursuant to 28 U.S.C. § 2631(i), which states that "[a]ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)-(h), may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5."

16. Plaintiffs have standing to sue the President because his actions, which Plaintiffs claim are contrary to Section 232, have caused injury in fact to their businesses and their competitive position in the United States market, in that the President's actions have diminished and, in some cases, eliminated their supply of products to be resold or manufactured in the United States.

17. Plaintiffs have standing to sue the Secretary of Commerce and the United States under Section 702 of the Administrative Procedure Act, 5 U.S.C. § 702, which states: "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

18. In an action under 5 U.S.C. § 706, "[t]he reviewing court shall...(2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law...and (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

19. As steel importers and sellers of steel products and manufacturers of products made in substantial part from steel, price increases have damaged Plaintiffs' ability to compete in the United States market. Steel prices increased substantially in the period January-April 2018 due in substantial part to the Commerce Report and the subsequent Proclamations. *See, e.g., Steel Benchmarker Report #300* (October 8, 2018), reporting price surveys during the period in question.

## THIS ACTION IS TIMELY

20. This action is filed within two years after the date of the Commerce Report and recommendation of the Secretary of Commerce, and therefore is timely under the applicable statute of limitations. *See* 28 U.S.C. § 2636(i).

## STRUCTURE OF SECTION 232

21. Section 232 directs the Secretary of Commerce (the "Secretary"), on the application of any "department or agency," the request of an interested party, or on his own motion, to undertake an investigation to determine the effects of imports of a particular article of commerce on the national security (the "subject article"). The President is not listed among those persons who is authorized to request the initiation of an investigation.

22. After following certain procedural steps, including consultation with the Secretary of Defense, the Secretary is required to submit a report to the President within 270 days after the initiation of the investigation, which includes the Secretary's findings on whether the article being investigated is being imported into the United States "in such quantities or under such

circumstances as to threaten to impair the national security," and his recommendations for action by the President, if the Secretary makes an affirmative finding.

23. Under section 232(c), the President must decide within 90 days after the Secretary's report to whether to concur with the findings of the Secretary, and if he concurs, to "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the [subject] article and its derivatives so that such imports will not threaten to impair the national security."

24. The statute does not provide authority to the President to modify the action taken in response to the Secretary's report and recommendations.

25. If the President determines that "the action taken" is "the negotiation of an agreement" to limit imports into the United States, and no agreement is entered into within 180 days after the date on which the determination is made, "the President shall take such other actions as the President deems necessary to adjust the imports" of the article.

26. Although the initial determination by the Secretary under section 232(b) and the President's action under section 232(c) are ostensibly tied to "national security," that term is not specifically defined in the statute.

27. Section 232(b)(3)(A) requires the Secretary of Commerce to submit a report "on the findings of such investigation with respect to the effect of the importation of such article in such quantities or under such circumstances upon the national security and, based on such findings, the recommendations of the Secretary for action or inaction under this section."

28. Section 232(c)(1)(A)(ii) requires the President, if he or she chooses to impose import restrictions, to disclose, within 90 days after receipt of the Secretary of Commerce's report and

recommendations, "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article."

29. Section 232(d) details the considerations that must be considered by the Secretary and the President. The issues that must be considered include: "domestic production needed for projected national defense requirements"; the "capacity of domestic industries to meet such requirements"; existing and anticipated availabilities of human resources, products, raw materials "and other supplies and services essential to the national defense"; and the "importation of goods in terms of their quantities, availabilities, character, and use as those affect such industries and the capacity of the united States to meet national security requirements."

30. A second set of issues is set forth in Section 232(d): "The Secretary and the President shall further recognize the close relation of  the economic welfare of the Nation to our national security…"  Section 232(d) does not authorize the Secretary or the President to ignore defense readiness or economic welfare in determining the impact of imports on national security; nor does it permit the imposition of import restrictions solely based on economic factors not impacting national defense.

### THE SECTION 232 INVESTIGATION

31. The Secretary initiated an investigation at the direction of defendant President Trump on April 20, 2017.  The investigation was announced in a notice published in the Federal Register on April 26, 2017.  *See* 82 Fed. Reg.19205. The public was permitted to request the opportunity to appear at a hearing conducted at the Department of Commerce on May 24, 2017.  The Bureau of Industry and Security, an agency of the Department of commerce, conducted the hearings.  There were approximately [100] witnesses.

32. The public was also permitted to provide written comments on the investigation.  The comment deadline was May [29], 2017.  Copies of the oral statements and written comments were posted on the Department's web site.

33. After the close of the comment period, the Department of Commerce did not conduct any public proceeding.  The Department met with members of the domestic steel industry, but did not release any information about those meetings.

34. On February 18, 2018, the Secretary of Defense sent a memorandum to Defendant Secretary Ross stating, in part, that the Department of Defense concluded that the findings in the Report did not "impact the ability of DoD programs to acquire the steel and aluminum necessary to meet national defense requirements."  The Commerce Department did not mention the Defense Department assessment of February 18, 2018 or address the implications of the lack of connection of steel imports to the nation's defense readiness.

35. The Commerce Report contained analysis of selected comments, but also included other information that was not provided by the public.  The source of the information obtained from other than public comments was not disclosed.

36. The Commerce Report did not contain any recommendation regarding the duration of recommended relief, despite the requirement of Section 232 that the recommended nature and duration of recommended relief be provided to the President.

## THE COMMERCE REPORT

37. The Report publicly released on February 16, 2018 concluded that imports of steel, as defined in the report, threatened to impair the national security "within the meaning of" Section 232. The Commerce Report did not explain the connection between the facts found and its perceived "meaning" of the statutory language.  The Commerce Report failed to:

a.  articulate circumstances under which imports of steel products "threaten to impair" the national security;

b.  support its finding that the domestic steel industry is not able to produce steel sufficient to meet defense readiness requirements;

c.  articulate or establish that imports of steel products "threaten" to destroy the steel industry in the United States; and

d.  Provide a recommendation concerning the duration of import restrictions.

38. Section 232 requires the Secretary of Commerce to find, and the President to concur, that "an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security."  There is no evidence that the word "threaten" is to be interpreted in any manner other than its ordinary meaning.  The ordinary meaning of the word "threaten," taken from the *Merriam-Webster Online Dictionary*, is:

1:  an expression of intention to inflict evil, injury, or damage
2:  one that threatens
3:  an indication of something *impending* (emphasis added)

39. Because the statute refers to imports of "articles," which cannot express an "intention to inflict evil," the first definition is inapplicable.  The second plainly applies to a living thing, which does not include imports; thus, the second definition is inapplicable. Therefore, Section 232 unambiguously requires the Secretary to determine that imports are "an indication of something *impending"*.

40. The Commerce Report failed to examine whether its perceived "threat" to national security was likely to occur in the reasonably near future and was therefore "impending".  It merely cited historical events, such as World War II and the War in Vietnam, as leading to increased demand for steel for national defense.  Changes in defense needs, the nature of the global economy and the place of the United States in the global economy since 1941 and 1965,

respectively, were not examined.  The Commerce Report thus failed to support its finding that the level of steel imports into the United States "threaten" to impair the national security.

41. The Commerce Report failed to explain the likely impact of the recommended remedies on industries that use steel in manufacturing.  Yet those "downstream" industries manufacture products that are critically important to national defense readiness and economic welfare. Potential adverse consequences include reduced demand for domestically produced merchandise due to increased prices; decline in employment in steel-using industries, such as transportation, construction, machinery and equipment, which industries employ many times the workers employed in the steel industry; and decline in U.S. exports of products containing steel. The Commerce Report failed to consider these consequences or explain why they were not important.

42. The Commerce Report found that the domestic steel production industry as a whole must achieve a rate of at least 80 percent of "rated production capacity," which is "necessary to sustain adequate profitability and continued capital investment, research and development, and workforce enhancement in the steel sector."  Report at 4, 5.  The Report did not cite or discuss any evidence supporting these assertions, and, on information and belief, the record of decision contains no such evidence.

43. The Report provides the sole basis for defendant President Trump's authority to proclaim tariffs, quotas and other import restrictions and therefore has, by itself, direct and appreciable legal consequences."

## THE PRESIDENTIAL PROCLAMATIONS

44. The President has issued the following Proclamations regarding steel import restrictions under Section 232:  (1) Proclamation 9705 (March 8, 2018); (2) Proclamation 9711 (March 22,

2018); (3) Proclamation 9740 (April 30, 2018); (4) Proclamation 9759 (May 31, 2018); (5) Proclamation 9772 (August 10, 2018); (6) Proclamation 9777 (August 29, 2018); (7) Proclamation 9886 (May 16, 2019); and (8) Proclamation 9894 (May 19, 2019) (collectively, the "Proclamations.")

45. On March 8, 2018, President Trump issued Proclamation 9705, which imposed a 25% increase in tariffs on all imported steel articles from all countries except Canada and Mexico with an effective date of March 23, 2018.  Proclamation 9705 failed to:

    a.   find that there is an *impending* threat to the national security of the United States;

    b.   set the duration of import restrictions as required by Section 232.

46. On March 22, 2018, President Trump issued Proclamation 9711, which modified Proclamation 9705 to exempt steel imports from Argentina, Australia, Brazil, the countries of the European Union and the Republic of Korea on the ground that negotiations were proceeding with those countries to limit imports.

47. On April 30, 2018, President Trump issued Proclamation 9740, which, *inter alia*, modified the previous Proclamations to continue exempting imports from Canada, Mexico and the European Union and replaced the 25 percent tariff on steel imports with quotas on the Republic of Korea.

48. On May 31, 2018, President Trump issued Proclamation 9759, which, *inter alia*, modified the previous Proclamations to impose tariffs on imports from Canada, Mexico and the European Union and imposed quotas on Brazil and Argentina based on agreements with those countries.

49. On August 10, 2018, President Trump issued Proclamation 9772 which, inter alia, without citing facts or authorities related to an impending threat to impair the national security, doubled the tariffs applicable to imports of steel from the Republic of Turkey from 25 percent to 50 percent.

50. On August 29, 2018, President Trump issued Proclamation 9777, which authorized the Secretary of Commerce to permit specific exclusions to countries subject to quotas under previous Proclamations and authorized other modifications to the product exclusion process, which had proven unworkable in several important respects.  *Inter alia,* Proclamation 9777 corrected the Secretary's erroneous interpretation of previous Proclamations to preclude product exclusions from quota countries.

51. On May 16, 2019, President Trump issued Proclamation 9886, which terminated the additional tariffs on steel imports from Turkey effective May 21, 2019.

52. On May 19, 2019, President Trump issued Proclamation 9894, which terminated the tariffs on steel imports from Canada and Mexico, effective May 23, 2019.

53. The President based the Proclamations cited above solely on the authority of Section 232.  No other legal authority exists for these Proclamations.

54. Proclamation 9711 deferred import restrictions on Argentina, Australia, Brazil, Canada, Korea, Mexico and the European Union pending negotiations "on satisfactory alternative means to address the threatened impairment to the national security by imports of steel articles from those countries".  On May 31, 2018, less than 180 days after the action to address imports required by the statute, Proclamation 9759 purported to impose tariffs on Canada, Mexico and the countries of the European Union.

## **COUNT ONE**

55. The allegations contained in Paragraphs 1-54 are incorporated herein by reference.

56. The Commerce Report is subject to review under the Administrative Procedure Act, 5 U.S.C. § 701-706.

57. The findings of the Commerce Report that steel imports "threaten to impair the national security" are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

58. The Commerce Report is in excess of statutory jurisdiction, authority or limitations under Section 232.

59. The findings in the Commerce Report are unsupported by substantial evidence.

60. The Commerce Report failed to limit the duration of recommended import restrictions and otherwise failed to abide by mandatory requirements of Section 232.

61. The President lacks the authority to proclaim import restrictions under Section 232 absent a valid report by the Secretary of Commerce; because the Report's key findings were not supported by substantial evidence, and the conclusions were arbitrary and capricious, the Report cannot lawfully support the President's proclamations under Section 232 and the import restrictions must be set aside.

## COUNT TWO

62. The allegations contained in Paragraphs 1-61 are incorporated herein by reference.

63. Presidential Proclamations 9705, 9711, 9740, 9759, 9772 and 9777 must be set aside as invalid because they are not supported by a valid report and recommendations of the Secretary of Commerce as required by Section 232.

64. The President's interpretations of Section 232 in the Proclamations are arbitrary and irrational and therefore contrary to law.

65. The President's proclaimed import restrictions failed to specify the duration of these measures, in violation of the requirements of Section 232.

## COUNT THREE

66. The allegations contained in Paragraphs 1-65 are incorporated herein by reference.

67. The President fundamentally misinterpreted Section 232 by failing to base his determination upon finding that imports of steel constitute an *impending* threat to impair the national security of the United States.

## COUNT FOUR

68. The allegations contained in Paragraphs 1-67 are incorporated herein by reference.

69.  Proclamation 9759 is contrary to law and unauthorized by Section 232 for failure to comply with mandatory conditions in the statute.  Specifically, tariffs on the European Union countries, Canada and Mexico were proclaimed earlier than 180 days after the announcement of the President's decision, contrary to the requirements of Section 232.

70. Proclamation 9772 is contrary to law and unauthorized by Section 232 for failure to comply with mandatory conditions in the statute.  Specifically, the increase of tariffs on steel imports from Turkey to 50 percent were proclaimed more than 90 days after the Commerce Report was delivered to the President.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

71. WHEREFORE, Plaintiffs request the following relief:

   a. A declaration that the Commerce Report and the Proclamations are contrary to law and therefore invalid;

   b. A permanent injunction against the enforcement of any quota or levying of any tariff imposed pursuant to the Report and the Proclamations;

   c. An order requiring refunds to the Plaintiffs of any tariffs found by this Court to have been imposed contrary to law;

d.  That the Court award Plaintiffs their costs and a reasonable attorney fee under applicable

provisions of law; and

e.  That the Court grant such other and further relief as may be just and proper.

Respectfully submitted,

The Law Office of Lewis E. Leibowitz
1400 16th Street, N.W., Suite 350
Washington, D.C. 20036
(202) 776-1142
lewis.leibowitz@lellawoffice.com

*Counsel to Plaintiffs Universal Steel
Products, Inc., PSK Steel Corporation, The
Jordan International Company and Dayton
Parts LLC*

December 3, 2019